ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

NOV 17 2016

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NISAR A. PIRACHA | Criminal Information<br><br>No. 1:16-CR-402 |

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE
(Conspiracy)

1. Beginning on or about November 19, 2012 and continuing through on or about June 5, 2013, in the Northern District of Georgia, and elsewhere, the defendant, NISAR A. PIRACHA, did knowingly combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally distribute and dispense, outside the usual course of professional medical practice and for no legitimate medical purpose, mixtures and substances containing detectable amounts of controlled substances, said conspiracy involving oxycodone (Schedule II), methadone (Schedule II), and alprazolam (Schedule IV), all in violation of Title 21, United States Code, Sections 841(b)(1)(C) and 846.

## BACKGROUND

2. At all times relevant to this Information:

 a. The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States. The Controlled Substances Act defines a "controlled substance" as a drug or other substance that was included within one of five "schedules" – Schedule I, II, III, IV, or V – of Subchapter I, Part B of the Act. 21 U.S.C. § 802(6).

 b. Various prescription drugs are defined as controlled substances under the Act. Drugs are placed into these schedules based on their potential for abuse, among other things.

  i. Schedule I drugs have a high potential for abuse, have no currently accepted medical use, and lack accepted safe use. 21 U.S.C. § 812(b)(1).

  ii. Schedule II drugs have a currently accepted medical use with severe restrictions and have a high potential for abuse that can lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2).

  iii. Schedule III drugs have a currently accepted medical use and have a high potential for abuse, less than the drugs listed in Schedule II. 21 U.S.C. § 812(b)(3).

2

    iv. Schedule IV drugs have a currently accepted medical use and have a low potential for abuse relative to the drugs in Schedule III. 21 U.S.C. § 812(b)(4).

    v. Schedule V drugs have a currently accepted medical use and have a low potential for abuse relative to the drugs in Schedule IV. 21 U.S.C. § 812(b)(5).

 c. Oxycodone is a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(xiii). Oxycodone is sold generically, and the brand names Oxycontin and Roxicodone are prescription drugs that contain oxycodone.

 d. Methadone is a Schedule II controlled substance. 21 C.F.R. § 1308.12(c)(15). Methadone is sold generically and under the brand name Methadose.

 e. Alprazolam is a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(2). Alprazolam is sold generically and under the brand name Xanax.

 f. Title 21, United States Code, Section 822(b), and Title 21, Code of Federal Regulations, Section 290.1, provide that the controlled substances listed in Schedules II, III, and IV can be dispensed or distributed only by prescriptions by a licensed practitioner. The Drug Enforcement Administration (DEA), as authorized by the Act, issues registration numbers to qualifying doctors and pharmacists that allow them to issue prescriptions or dispense Schedule II, III, and IV controlled substances. Accordingly, the controlled substance described

above can be dispensed only pursuant to a valid prescription from a physician authorized by the DEA to distribute controlled substances. 21 C.F.R. § 1306.03.

g. Title 21, Code of Federal Regulations, Section 1306.04, provides that in order for a prescription for a controlled substance to be valid, it "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." This section further provides that:

> The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner . . . . An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04.

h. An order purporting to be a prescription that was issued outside the usual course of professional treatment is not a prescription within the meaning of the Controlled Substances Act, and the person who issues the prescription violates section 841(a)(1) of Title 21 of the United States Code.

i. Nisar Piracha MD, PC, also known as Piracha Wellness (hereinafter referred to as the "Clinic"), was an ostensible pain clinic operating at 11 Dunwoody Park, Suite 120, Atlanta, GA 30338.

j. NISAR A. PIRACHA was the owner of the Clinic and the primary physician. NISAR A. PIRACHA was registered with the DEA under the provisions of the Controlled Substances Act as a practitioner and was assigned a DEA registration number that authorized him to write prescriptions for Schedule II, III, IV, and V controlled substances.

## PURPOSES, MANNER, AND MEANS OF CONSPIRACY

3. The purposes of the conspiracy included, but were not limited to, prescribing oxycodone, methadone, and alprazolam, among other drugs, irrespective of any legitimate medical purpose for prescribing them, in an effort to generate significant profits. To accomplish this purpose, the defendant, NISAR A. PIRACHA, with the knowing involvement and participation of others known and unknown to the Grand Jury, would prescribe amounts of oxycodone, methadone, and alprazolam, among other drugs, for other than a legitimate medical purpose and not in the usual course of professional treatment, thus causing, aiding, abetting, and facilitating the misuse, abuse, and distribution of the prescribed controlled substances.

4. It was part of the conspiracy that the defendant, NISAR A. PIRACHA, would prescribe Schedule II and Schedule IV controlled substances at a patient's first appointment without conducting a thorough medical examination, which did not result in a legitimate diagnosis justifying the prescriptions for the

controlled substances. Further, NISAR A. PIRACHA prescribed these drugs in inappropriate amounts and dosage combinations that exceeded that required for legitimate medical treatment. At follow-up visits, NISAR A. PIRACHA wrote additional prescriptions with no or limited medical evaluation that was required to continue writing prescriptions at the dosages indicated.

## Forfeiture Provision

5. Upon conviction of the controlled substance offense alleged in Count One of this Information, the defendant, NISAR A. PIRACHA, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and all property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, including, but not limited to, the following:

   a. MONEY JUDGMENT: A sum of money in United States currency equal to the amount of proceeds the defendant obtained as a result of the offense to which the defendant is convicted.

   b. CURRENCY AND FUNDS:

      i. $425,055.42 in funds seized from United Central Bank account no. XXXXXXXX4605.

      ii. $13,482.41 in funds seized from Bank of America account no. XXXXXXXX4994.

   iii. $41,465.00 in United States currency seized on or about June 5, 2013 at 1950 Willow Trail Parkway, Apt. 113, Norcross, Georgia.

   iv. $3,047.00 in United States currency seized on or about June 5, 2013 at 11 Dunwoody Park, Suite 120, Atlanta, Georgia.

6. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

  (1) cannot be located upon the exercise of due diligence;

  (2) has been transferred or sold to, or deposited with, a third person;

  (3) has been placed beyond the jurisdiction of the Court;

  (4) has been substantially diminished in value; or

  (5) has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property or seek a money judgment against said defendant for any amount that would constitute the proceeds of such violation.

JOHN A. HORN
*United States Attorney*

*/s/ Nathan P. Kitchens*
NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930

*/s/ Michael J. Brown*
MICHAEL J. BROWN
*Assistant United States Attorney*
Georgia Bar No. 064437

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181